UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH G. WILKINSON; and KELLY G. WILKINSON,<br><br>Plaintiffs,<br><br>v.<br><br>PHH MORTGAGE CORPORATION; and WESTERN PROGRESSIVE LLC,<br><br>Defendants. | No. 2:24-cv-01416-TLN-AC<br><br>**MEMORANDUM AND ORDER** |

On May 17, 2024, Plaintiffs Kenneth G. Wilkinson and Kelly G. Wilkinson (collectively, "Plaintiffs") brought this action against Defendants PHH Mortgage Corporation ("PHH") and Western Progressive LLC (collectively, "Defendants"), alleging breach of their mortgage agreement. (ECF No. 1.) Presently before the Court is Plaintiffs' *Ex Parte* Application for Temporary Restraining Order ("TRO"). (ECF No. 4.) For the reasons set forth below, Plaintiffs' application is DENIED.

///

///

///

///

1

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

As an initial matter, Plaintiffs proceed in this action without counsel. Given this, their Complaint and application are often incoherent, and it is difficult for the Court to ascertain what factual allegations underlie Plaintiffs' claims. However, the Complaint and application, when read in conjunction with Plaintiffs' exhibits suggest the following allegations.

Lei Anne Wilkinson originally owned the property located at 3961 Nugget Lane, Placerville, California 95667 (the "Subject Property"), but it is unclear when she purchased the property. (ECF No. 4 at 2.) On December 9, 1999, Lei Anne Wilkinson took out a $136,000.00 mortgage with BYL Bank Group which was secured by the Subject Property (the "Subject Loan"). (*Id*. at 192.) A deed, dated May 4, 2004, shows the Subject Property was held in joint tenancy by Lei Anne Wilkinson and Kenneth G. Wilkinson as two unmarried people. (*Id*. at 86.) Plaintiffs also allege Lei Anne and Kenneth Wilkinson's son, Kelly Wilkinson, lived at the Subject Property. (*Id*. at 84.)

On May 1, 2019, PHH acquired the Subject Loan. (*Id*. at 186.) At some time in 2020, a loan modification was completed and the new principal balance on the Subject Loan was $231,022.27. (*Id*. at 188.) On March 6, 2020, Lei Anne Wilkinson died without a will and Plaintiffs allege the Subject Property passed to them. (*Id*. at 84.) On June 1, 2021, the Subject Loan went into delinquency. (*Id*. at 247.) It is unclear from the record before the Court when or if Defendants recorded a Notice of Default against Plaintiffs' interest in the Subject Property, but Plaintiffs allege they began corresponding with Defendants in January 2024 about repayment of the outstanding balance on the Subject Loan. (*Id*. at 7.) Specifically, Plaintiffs allege they sent Defendant "multiple conditional acceptances" to repay the Subject Loan, provided Defendants send Plaintiffs "original documentation and evidence of consideration." (*Id*.) Plaintiffs further allege they did not begin repayment of the Subject Loan because Defendants never provided the requested documentation. (*Id*.)

On April 1, 2024, Defendants issued a Notice of Trustee's Sale with a sale date scheduled for May 23, 2024. (*Id*. at 295.) On May 17, 2024, Plaintiffs initiated the instant action against Defendants in this Court, alleging breach of contract. (ECF No. 1.) That same day, Plaintiffs

1 also filed the present application for a TRO to enjoin the foreclosure sale of the Subject Property.
2 (ECF No. 4.)  Defendants did not file a response.

3       **II.**     **STANDARD OF LAW**

4     A temporary restraining order is an extraordinary remedy.  The purpose of a temporary
5 restraining order is to preserve the status quo pending a fuller hearing.  *See* Fed. R. Civ. P. 65.  In
6 general, "[t]emporary restraining orders are governed by the same standard applicable to
7 preliminary injunctions." *Aiello v. One West Bank*, No. 2:10-cv-0227- GEB-EFB, 2010 WL
8 406092 at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* L.R. 231(a).
9     Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear
10 showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555
11 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  "The
12 purpose of a preliminary injunction is merely to preserve the relative positions of the parties until
13 a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also*
14 *Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The
15 purpose of such an order is to preserve the status quo until a final determination following a
16 trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo
17 ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last
18 uncontested status which preceded the pending controversy.").
19     "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed
20 on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,
21 [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."
22 *Winter*, 555 U.S. at 20.  A plaintiff must "make a showing on all four prongs" of the *Winter* test
23 to obtain a preliminary injunction. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th
24 Cir. 2011).  In evaluating a plaintiff's motion for preliminary injunction, a district court may
25 weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.*  A
26 stronger showing on the balance of the hardships may support issuing a preliminary injunction
27 even where the plaintiff shows that there are "serious questions on the merits . . . so long as the
28 plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the

public interest." *Id.* Simply put, Plaintiffs must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Plaintiffs' favor in order to succeed in a request for preliminary injunction. *Id.* at 1134–35.

### III. ANALYSIS

Plaintiffs filed the present application for a TRO to enjoin the foreclosure sale of the Subject Property four business days before the scheduled sale on May 23, 2024. (ECF No. 4.)

Eastern District of California Local Rule 231(b) provides that "the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order." Should the Court find such a delay, the Court may deny the requested TRO on those grounds alone. L.R. 231(b).

In the instant case, Plaintiffs were aware the Subject Loan was in default since at least January 2024. (ECF No. 4 at 7.) Plaintiffs were also aware that Defendants issued a Notice of Trustee's Sale on April 1, 2024, fifty-three days before the scheduled sale date of May 23, 2024. (*Id*. at 295.) Yet, Plaintiffs did not seek a TRO to enjoin the foreclosure sale until May 17, 2024, only four business days before the scheduled sale date. (ECF No. 4.)

Plaintiffs do not claim they had inadequate notice of the scheduled sale date, nor do Plaintiffs provide any explanation for why they did not seek a preliminary injunction earlier. For these reasons, the Court exercises its discretion under Local Rule 231(b) to deny Plaintiffs' application for last-minute relief as Plaintiffs' delay contradicts their allegations of irreparable injury. *See Mammoth Specialty Lodging, LLC v. We-Ka-Jassa Inv. Fund, LLC*, No. CIV-S10-0864-LKK-JFM, 2010 WL 1539811, at *2 (E.D. Cal. Apr. 16, 2010) (denying a TRO application solely based on Local Rule 231(b) because "plaintiff did not file the motion until four business days before the scheduled foreclosure sale"); *Avila v. Citi Mortg. Inc.*, No. 1:17-cv-1581-LJO-BAM, 2017 WL 5871473, at *1 (E.D. Cal. Nov. 29, 2017) (finding it appropriate to deny plaintiff's TRO request under Local Rule 231(b) because plaintiff received ample notice of foreclosure sale and failed to "explain why he waited until the last possible moment to attempt to block the sale.")

1 | Therefore, the Court DENIES Plaintiffs' Application for TRO.  (ECF No. 4.)

### IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' *Ex Parte* Application for Temporary Restraining Order, (ECF No. 4), is DENIED.

IT IS SO ORDERED.

Date:  May 22, 2024

_____
Troy L. Nunley
United States District Judge