UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH G. WILKINSON; and KELLY G. WILKINSON<br><br>Plaintiffs,<br><br>v.<br><br>PHH MORTGAGE CORPORATION; and WESTERN PROGRESSIVE LLC,<br><br>Defendants. | No. 2:24-cv-01416-TLN-AC<br><br>**ORDER** |

This matter is before the Court on Plaintiffs Kenneth G. Wilkinson and Kelly G. Wilkinson's ("Plaintiffs") Ex Parte Application for a Temporary Restraining Order ("TRO"). (ECF No. 18.) No opposition has been filed by Defendants PHH Mortgage Corporation ("PHH") and Western Progressive LLC (collectively, "Defendants"). For the reasons set forth below, Plaintiff's application is DENIED.

///

///

///

///

///

///

1

### I. FACTUAL AND PROCEDURAL BACKGROUND

As an initial matter, Plaintiffs proceed in this action without counsel. As a result, the Court experienced some difficulty in determining the factual allegations underlying Plaintiff's claims. However, Plaintiffs' application for a TRO, when read in conjunction with documents in the Court's record, suggest the following allegations.

Lei Anne Wilkinson originally owned the property located at 3961 Nugget Lane, Placerville, California 95667 (the "Subject Property"), but it is unclear when she purchased the property. (ECF No. 4 at 2.) On December 9, 1999, Lei Anne Wilkinson took out a $136,000.00 mortgage with BYL Bank Group which was secured by the Subject Property (the "Subject Loan"). (*Id*. at 192.) A deed, dated May 4, 2004, shows the Subject Property was held in joint tenancy by Lei Anne Wilkinson and Kenneth G. Wilkinson as two unmarried people. (*Id*. at 86.) Plaintiffs also allege Lei Anne and Kenneth Wilkinson's son, Kelly Wilkinson, lived at the Subject Property. (*Id*. at 84.)

On May 1, 2019, PHH acquired the Subject Loan. (*Id*. at 186.) At some time in 2020, a loan modification was completed and the new principal balance on the Subject Loan was $231,022.27. (*Id*. at 188.) On March 6, 2020, Lei Anne Wilkinson died without a will and Plaintiffs allege the Subject Property passed to them. (*Id*. at 84.) On June 1, 2021, the Subject Loan went into delinquency. (*Id*. at 247.) It is unclear from the record before the Court when or if Defendants recorded a Notice of Default against Plaintiffs' interest in the Subject Property, but Plaintiffs allege they began corresponding with Defendants in January 2024 about repayment of the outstanding balance on the Subject Loan. (*Id*. at 7.) Specifically, Plaintiffs allege they sent Defendant "multiple conditional acceptances" to repay the Subject Loan, provided Defendants send Plaintiffs "original documentation and evidence of consideration." (*Id*.) Plaintiffs further allege they did not begin repayment of the Subject Loan because Defendants never provided the requested documentation. (*Id*.)

On April 1, 2024, Defendants issued a Notice of Trustee's Sale with a sale date scheduled for May 23, 2024. (*Id*. at 295.) On May 17, 2024, Plaintiffs initiated the instant action against Defendants in this Court, alleging breach of contract. (ECF No. 1.) That same day, Plaintiffs

1  also filed an application for a TRO to enjoin the foreclosure sale of the Subject Property. (ECF

2  No. 4.) On May 22, 2024, the Court denied Plaintiffs' application for a TRO. (ECF No. 5 at 5.)

3  At some point, Plaintiffs filed for Chapter 13 bankruptcy. (ECF No. 18-1 at 1.) Plaintiffs

4  allege that on September 16, 2024, their bankruptcy case was dismissed without Plaintiffs'

5  knowledge. (*Id*.) Plaintiffs allege they did not know about the dismissal of their bankruptcy case

6  until September 26, 2024. (*Id*.) Plaintiffs further allege Defendants scheduled an auction of the

7  Subject Property to occur on September 26, 2024. (*Id*.) Plaintiffs are unaware if the sale of the

8  Subject Property in fact occurred. (ECF No. 18-2 at 1.)

9  On September 27, 2024, Plaintiff Kenneth G. Wilkinson ("Kenneth") filed a Second

10 Amended Complaint. (ECF No. 17.) That same day, Plaintiffs filed the present application for a

11 TRO to invalidate any foreclosure sale that may have occurred on September 26, 2024, and enjoin

12 future foreclosure actions of the Subject Property. (ECF No. 18.)

13 **II.    STANDARD OF LAW**

14 A TRO is an extraordinary remedy. The purpose of a TRO is to preserve the status quo

15 pending a fuller hearing. *See* Fed. R. Civ. P. 65. In general, "[t]emporary restraining orders are

16 governed by the same standard applicable to preliminary injunctions." *Aiello v. One West Bank*,

17 No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092, at *1 (E.D. Cal. Jan. 29, 2010) (internal citations

18 omitted); *see also* E.D. Cal. L.R. 231(a).

19 Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear

20 showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555

21 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The

22 purpose of a preliminary injunction is merely to preserve the relative positions of the parties until

23 a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also*

24 *Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The

25 purpose of such an order is to preserve the status quo until a final determination following a

26 trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo

27 ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last

28 uncontested status which preceded the pending controversy.").

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id*.  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*.  Simply put, plaintiffs must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in [p]laintiffs' favor in order to succeed in a request for preliminary injunction. *Id*. at 1134–35.

**III.    ANALYSIS**

  A.    <u>The Second Amended Complaint</u>

As a preliminary matter, the Court concludes the Second Amended Complaint filed on September 27, 2024, is procedurally defective for two reasons.  (ECF No. 17.)  First, Rule 11 requires that pleadings be signed by the parties, and Kelly G. Wilkinson has not signed the Second Amended Complaint.  (ECF No. 17 at 3.)  Second, Rule 15 requires that a party seek the opposing party's consent or leave of court prior to amending its pleading if the party has already amended its pleading once. *See* Fed. R. Civ. P. 15.  Plaintiffs already filed a First Amended Complaint on June 20, 2024.  (ECF No. 10.)  There is no indication Kenneth obtained opposing party's consent to file the Second Amended Complaint, nor has he sought leave to amend from the Court.  It also bears mentioning that the Second Amended Complaint inexplicably removes almost all the factual allegations underlying Plaintiffs' claims that were present in the First Amended Complaint.

Accordingly, the Court STRIKES Plaintiff's Second Amended Complaint as procedurally defective.  As such, this case proceeds on the operative First Amended Complaint.

4

     B.  Plaintiffs' Application for a TRO

First, Plaintiffs request the Court declare the sale of the Subject Property, if it occurred on September 26, 2024, void. (ECF No. 18 at 5). Plaintiffs argue they face immediate or irreparable harm because the Subject Property is Plaintiffs' primary residence and holds significant sentimental value. (*Id.* at 2).

The Court finds the Plaintiffs have failed to demonstrate they are likely to suffer irreparable harm in the absence of preliminary relief. Plaintiffs fail to provide any evidence about the date of the sale. Rather, they speculate the sale occurred on September 26, 2024, which was the day before they filed the instant application for a TRO. To the extent that the sale did occur, Plaintiffs are not entitled to injunctive relief because Plaintiffs already suffered the anticipated harm. Regardless of whether Defendant harmed Plaintiff in the past, Plaintiff must still show that the threat of injury in the future is "certainly impending" or that it presents a "substantial risk" of recurrence for the Court to hear its claim for prospective relief. *Munns v. Kerry*, No. 12–15969, 782 F.3d 402, 411–12 (9th Cir. 2015)

Second, Plaintiffs request the Court enjoin future foreclosure actions of the Subject Property. To the extent there are any future foreclosure actions pending, Plaintiffs fail to provide the Court with evidence about when such actions are scheduled to occur. Absent such evidence, Plaintiffs' vague reference to future foreclosure actions is too speculative to constitute imminent harm. The Court also notes Plaintiffs sought the same relief on May 17, 2024, by way of an application for a TRO.[1] (ECF No. 4.) On May 22, 2024, the Court denied Plaintiffs' application for a TRO under Local Rule 231(b), concluding that the appropriate manner to seek the relief requested was by way of a motion for preliminary injunction since they have been aware the Subject Loan was in default since at least January 2024. (ECF No. 5 at 4.) For the same reasons addressed in the Court's order denying the prior application for a TRO, the Court again exercises its discretion under Local Rule 231(b) to deny Plaintiffs' application for last-minute relief as Plaintiffs' delay contradicts their allegations of irreparable injury. *See Mammoth Specialty*

---

[1] Plaintiffs are cautioned against filing similarly deficient TROs in the future.

*Lodging, LLC v. We-Ka-Jassa Inv. Fund, LLC*, No. CIV-S10-0864-LKK-JFM, 2010 WL 1539811, at *2 (E.D. Cal. Apr. 16, 2010) (denying a TRO application solely based on Local Rule 231(b) because "plaintiff did not file the motion until four business days before the scheduled foreclosure sale"); *Avila v. Citi Mortg. Inc.*, No. 1:17-cv-1581-LJO-BAM, 2017 WL 5871473, at *1 (E.D. Cal. Nov. 29, 2017) (finding it appropriate to deny plaintiff's TRO request under Local Rule 231(b) because plaintiff received ample notice of foreclosure sale and failed to "explain why he waited until the last possible moment to attempt to block the sale.")

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Ex Parte Application for Temporary Restraining Order, (ECF No. 18), is DENIED.

IT IS SO ORDERED.

Date: September 30, 2024

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE